THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| RICHARD HADLOCK, an individual, RICORE SERVICES, LLC, a Utah limited liability company, TERRENCE HIGGINS, an individual,<br><br>      Plaintiffs,<br><br>v.<br><br>DHM INDUSTRIES, INC., a Utah corporation dba DOHARDMONEY.COM, RYAN G. WRIGHT, an individual, MATT SCHAUGAARD, an individual, KIMBERLY LAMM, an individual, ROCKY CUTRIGHT, an individual,<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [5] MOTION TO COMPEL ARBITRATION, STAY FURTHER PROCEEDINGS, AND AWARD ATTORNEY'S FEES AND COSTS**<br><br><br><br><br>Case No.  2:21-cv-00406-DBB<br><br>District Judge David Barlow |

Before the court is Defendants' Motion to Compel Arbitration, Stay Further Proceedings, and Award Attorney's Fees and Costs.[1] Having considered the briefing and the relevant law, the court concludes the motion may be resolved without oral argument.[2] For the reasons discussed herein, the court GRANTS the motion to compel and stay further proceedings and DENIES the parties' requests for attorney's fees and costs.

---

[1] ECF No. 5, filed July 21, 2021.
[2] *See* DUCivR 7-1(f).

## BACKGROUND

In September 2017, Ricore Services LLC (Ricore) entered into an Investor Agreement with Dohardmoney.com, Inc. (DHM).[3] The agreement was signed by Plaintiff Hadlock for Ricore and by Defendant Wright for DHM.[4] Section 18 of the Agreement provides:

> [I]n the event of default by either party of its respective obligations, covenants or representations herein contained or incorporated herein, the non-defaulting party shall have all rights and remedies available in law and equity against such default party; provided, however, that except for injunctive relief which can be sought in any court of competent jurisdiction, all disputes between the parties hereto that cannot be settled by mutual agreement, shall be submitted to binding arbitration in accordance with the rules of the American Arbitration Association, with hearings to take place in Salt Lake City, Utah.[5]

In July 2019, 4185 Enright Avenue LLC (Enright) entered into a Property Improvement Escrow Agreement with DHM Industries, Inc. dba Dohardmoney.com.[6] This agreement was signed by Plaintiff Higgins for Enright and Defendant Schaugaard for DHM. Section 8.7 provides:

> In the event a dispute arises out of this Escrow Agreement, then the parties agree the dispute shall be heard in the Third District Court, Salt Lake County, State of Utah. This Escrow Agreement shall be governed by the laws of the State of Utah. Either party may choose to arbitrate a dispute instead of litigation in court, in which case, the parties agree to submit to binding arbitration with the American Arbitration Association (AAA) at a venue in Salt Lake County, Utah.[7]

---

[3] Complaint at ¶ 1, ECF No. 2; Investor Agreement at 9, ECF No. 5-1.
[4] Investor Agreement at 9.
[5] *Id.* at 7–8.
[6] Escrow Agreement at 1, ECF No. 5-2.
[7] *Id.* at 4.

Plaintiffs allege Defendants provided false and misleading information such as overvaluing the home and underestimating renovation costs, negligently and carelessly managed Hadlock's investment, and failed to timely provide funds to Higgins to renovate the property.[8] Plaintiffs allege various causes of action for fraud, misrepresentation, breach of contract, and securities fraud.

## LEGAL STANDARD

In ruling on a motion to compel arbitration, "courts must resolve 'whether the parties are bound by a given arbitration clause' and 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'"[9]

To determine whether a dispute falls within the scope of the applicable arbitration clause, the court conducts a three-part inquiry.[10] First, the court classifies the clause as either broad or narrow.[11] Next, if it is a narrow clause, "the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause."[12] And lastly, if the clause is broad, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the

---

[8] *See* Complaint at ¶¶ 3, 12, 51.
[9] *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1250 (10th Cir. 2018) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).
[10] *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (emphasis in original) (citation omitted).
[11] *Id.*
[12] *Id.*

parties' rights and obligations under it."[13] "If the allegations underlying the claims touch matters covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them."[14]

## DISCUSSION

### I.      The Investor Agreement Contains a Broad Arbitration Clause that Compels Arbitration.

The court must first determine whether the Investor Agreement contains a valid arbitration clause. Plaintiffs argue the Agreement is invalid because Dohardmoney.com is not a corporation, has never existed, and is not a valid entity of any kind.[15] Because it was not a valid entity, the contract is void and there is no applicable arbitration clause. This argument is unsupported by the facts.

The business was originally registered as Dohardmoney.com on June 22, 2007.[16] In 2010, the entity was converted to a corporation, Dohardmoney.com, Inc.[17] The Utah Division of Corporations received the Articles of Incorporation on May 12, 2010.[18] Ryan Wright was listed as the sole director and incorporator.[19] On July 14, 2017, the corporation filed an amendment to change its name to DHM Industries, Inc.[20] Ryan Wright was again listed as the sole director and

---

[13] *Id.*

[14] *Chelsea Fam. Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1198 (10th Cir. 2009) (alteration in original) (citation omitted).

[15] Plaintiffs' Opposition at 3, ECF No. 6.

[16] Utah Department of Commerce Articles of Conversion at 1, ECF No. 7-1.

[17] *Id.*

[18] *Id.* at 3.

[19] *Id.* at 6.

[20] *Id.* at 7–8.

incorporator.[21] That same day, the business also filed a Business Name Registration/DBA Application to do business as Dohardmoney.com.[22] The owner/applicant is listed as DHM Industries, Inc.[23] It is signed by Ryan Wright.[24]

The Investor Agreement was entered into in September 2017, two months after Dohardmoney.com, Inc. was renamed DHM Industries, Inc., dba Dohardmoney.com. Yet the Investor Agreement identifies the entity by its prior name, "Dohardmoney.com, Inc. ('DHM'), a Utah corporation."[25] And the signature line has Ryan Wright signing for "Dohardmoney.com, Inc."[26] The Agreement should have stated DHM Industries, Inc., dba Dohardmoney.com.

The Utah Court of Appeals has determined that it "is the general rule that, where there is a misnomer of a corporation in a grant, obligation, written contract, notice of the like, if there is enough expressed to show that there is such an artificial being, and to distinguish it from all others, the corporate body is well named, even though there is a variation of words and syllables."[27] So "the misnomer of a corporation generally will not be treated by the courts as material, if the identity of the corporation is reasonably clear or can be ascertained by sufficient

---

[21] *Id.* at 8.
[22] Department of Commerce Business Name Registration/DBA Application at 1, ECF No. 7-2.
[23] *Id.*
[24] *Id.*
[25] Investor Agreement at 1.
[26] *Id.* at 9.
[27] *Kelly v. Hard Money Funding, Inc.*, 87 P.3d 734, 740 (Utah Ct. App. 2004); *see also* 18A Am. Jur. 2d. Corporations § 232 (Aug. 2021); *HM of Topeka, LLC v. Indian Country Mini Mart,* 236 P.3d 535, 539 (Kan. App. 2010) (holding that "misidentification of a contracting party's legal name in a contract does not, in and of itself, prohibit any party to that contract from enforcing it as long as the entity's true identity is reasonably clear or can be ascertained by sufficient evidence and the other parties to the contract were not, or were not likely to have been, misled by the misidentification.").

evidence."[28] And "the inquiry is focused on whether the 'identity of the corporation is reasonably clear or can be ascertained by sufficient evidence.'"[29]

  Because DHM is referred to throughout the Agreement as "DHM," still does business as Dohardmoney.com, and was signed by the sole director and incorporator of DHM, any misnomer in the contract is immaterial. And to be clear, all that happened in July 2017 was a name change of the entity; nothing else about the corporation changed. Further, Plaintiffs have not argued nor presented any evidence that they did not know who they were doing business with, that they were confused about the business name, or that they thought they were doing business with any other entity. Plaintiffs also do not address the applicable Utah case law; indeed, they cite no case law at all. Instead, they aver that Dohardmoney.com was a "sham corporation," that it "never existed," and that, as a result, the Agreement was "based on fraud."[30] These contentions are baseless.[31]

  Because the Investor Agreement is not void and contains an arbitration clause in Section 18, the court next determines the scope of the arbitration clause and whether it applies to the conflict at issue. Plaintiffs argue that this is a narrow clause and only applies to "defaults." "To determine the breadth of an arbitration clause [the court asks] if 'the parties *clearly manifested* an

---

[28] *Morris v. Off-Piste Capital LLC*, 418 P.3d 66, 72 (Utah Ct. App. 2018) (citation omitted).
[29] *Id.*
[30] Opposition at 2–3.
[31] Plaintiffs also contend that "Because DHM Industries was not in existence on September 1, 2020, DOHARDMONE.COM [sic] could not have been its dba." *Id.* at 5. Again, this contention is belied by the record. *See* Utah Department of Commerce Articles of Conversion at 1, 7–8, ECF No. 7-1; Department of Commerce Business Name Registration/DBA Application at 1, ECF No. 7-2.

intent to narrowly limit arbitration to specific disputes' that might arise between them."[32] Here, the Agreement provides that "in the event of default by either party…*all disputes* between the parties hereto that cannot be settled by mutual agreement *shall be submitted to binding arbitration*."[33]

This is a broad clause. Reading the clause in its entirety, it provides that if a party defaults, then *all* disputes are submitted to arbitration. There is no "clearly manifested" intent by the parties to narrowly limit arbitration to specific disputes. Tenth Circuit cases are instructive on this point. For instance, in *Chelsea*, the Tenth Circuit determined a clause was narrow because it applied to claims "arising out of or relating to *payments to Pharmacy by Medco or audit issues but not relating to termination*…"[34] This agreement specifically excluded certain matters like the termination of the agreement and demonstrated an intent to narrowly limit arbitration.[35]

Similarly, the Investor Agreement's clause is unlike the clause in *Cummings* that provided: "In the event FedEx Ground acts to terminate this Agreement…and [plaintiff] disagrees with such termination…, then each such disagreement (but no others) shall be settled by arbitration…."[36] The Tenth Circuit found this clause "manifests an obvious intent to be narrowly constructed."[37] It contained the explicit exception "but no others" to narrow the scope

---

[32] *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1196 (10th Cir. 2009) (emphasis added) (quoting *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258 (10th Cir. 2005)).
[33] Investor Agreement at 7–8 (emphases added).
[34] *Chelsea*, 567 F.3d at 1195 (emphasis added).
[35] *Id.* at 1196–97. The Tenth Circuit further noted that "[e]xcluding certain categories of disputes from arbitration is not alone dispositive of whether the clause is broad or narrow, *but it is indicative of an agreement to limit arbitration to specific disputes*." *Id.* at 1196 n.4 (emphasis added).
[36] *Cummings*, 404 F.3d at 1260 (alteration in original).
[37] *Id.* at 1262.

of arbitration. In contrast, the parties here agreed that if there was a default by any party, then *all disputes* would go to arbitration.

In this case, Plaintiffs included the Agreement as the sole exhibit to their Complaint, referenced it repeatedly throughout the Complaint, and made multiple claims that are expressly based on the Agreement and alleged failings thereunder.[38] Under these circumstances, the parties agreed that all the disputes between them are subject to binding arbitration. Accordingly, the claims brought by Plaintiffs Hadlock and Ricore are subject to arbitration under the Investor Agreement.

## II.    The Escrow Agreement Contains a Broad Arbitration Clause that Compels Arbitration.

The court next addresses the separate Escrow Agreement between Plaintiff Higgins and Defendants. Plaintiffs did not present any argument on this agreement; they did not contend that it is invalid or does not apply.[39] Because it is undisputed the Escrow Agreement is a valid contract and contains an arbitration clause, the court must determine the scope of the clause and if it applies to Plaintiffs' claims.

Section 8.7 applies to "a dispute aris[ing] out of this Escrow Agreement."[40] If a party chooses to arbitrate instead of litigate, the parties "agree to submit to binding arbitration."[41] This is a broad clause applying to a dispute arising out of the Agreement. By filing the motion,

---

[38] *See* Complaint.
[39] Plaintiffs' Opposition contains arguments related only to the Investor Agreement and does not address the Escrow Agreement. *See* Opposition at 3–8.
[40] Escrow Agreement at 4, ECF No. 5-2.
[41] *Id.*

Defendants have chosen to arbitrate instead of litigate. The question is then if the allegations in the Complaint fall within this scope and arise out of the Agreement. The court concludes that they do. The parties entered into the Agreement whereby DHM would lend the Enright money to make improvements to real property in Missouri.[42] Plaintiffs allege Defendants failed to make the renovation funds available to Plaintiff Higgins.[43] These claims arise out of the obligations in the Escrow Agreement to lend money to make the improvements. Accordingly, the parties have agreed to arbitrate this dispute and must do so.

## ORDER

Based on the reasoning above, Defendants' motion to compel arbitration and stay further proceedings is GRANTED. The parties are ordered to provide status reports every 90 days until the arbitration has been completed. The parties' requests for attorney's fees and costs are DENIED.

Signed September 30, 2021.

BY THE COURT

David Barlow
United States District Judge

---

[42] Escrow Agreement at 1, ECF No. 5-2.
[43] *See e.g.*, Complaint at ¶¶ 27, 38, 45.